UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EARL NEWHOUSE, | ) | CASE NO. 1:17-cv-1276 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Jonathan D. Greenberg (Doc. No. 16) with respect to plaintiff's complaint for judicial review of defendant's denial of his request to reopen a previous application for Disability Insurance Benefits ("DIB") under 42 U.S.C. §§ 416(i), 423, 1381, *et seq.* (the "Act"). Plaintiff filed objections to the R&R (Doc. No. 17 ("Obj.")) and defendant filed a response to the objections (Doc. No. 18 ("Resp.")). Upon *de novo* review and for the reasons set forth below, the Court hereby overrules plaintiff's objections, accepts the R&R, and dismisses this case.

## I. BACKGROUND

Plaintiff, proceeding *pro se*, first applied for DIB on April 24, 2001, alleging a disability onset date of June 30, 1999. (Doc. No. 12 (Transcript ["Tr."]) 151-53.[1]) On July 24, 2001, the Social Security Administration ("SSA") issued a determination letter finding plaintiff disabled as of June 30, 1999 due to affective disorders and anxiety, but finding him eligible for Medicare only

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

(not also DIB), due to an insufficient number of quarters of coverage.[2] (*Id.* 157-58;[3] *see also id.* 147, 292.)[4] The determination letter advised plaintiff of the process and timeline for any appeal, but plaintiff took no further action. (*Id.* 147.)

Eleven years later, on September 10, 2012, plaintiff filed a new *pro se* DIB application, alleging the same disability onset date of June 30, 1999. (*Id.* 159-65.) With this application, plaintiff provided updated earnings information showing self-employment income from 2000 and 2001. (*See* Tr. 147.) On April 24, 2013, the SSA determined that plaintiff had sufficient quarters of coverage to be insured for DIB beginning January 1, 2001. (*Id.* 167.) The SSA subsequently awarded DIB back to August 2011, twelve months before the filing of his second application. (*Id.* 168-70.)

Represented by counsel, plaintiff requested reconsideration, arguing that he was "entitled to benefits further back in time." (*Id.* 172.) After the SSA denied reconsideration, finding that the regulations did not permit plaintiff to receive retroactive benefits more than twelve months prior to his September 2012 application (*id.* 177), plaintiff requested a hearing before an Administrative

---

[2] The R&R explains:

> According to the SSA, the term "quarter of coverage" or "QC" "is the basic unit for determining whether a worker is insured under the Social Security program. No matter how high your earnings may be, you can not earn more than 4 QC's in one year." *See* https://www.ssa.gov/oact/cola/QC.html. The legal definition of this term and the requirements for earning quarters of coverage are set forth in 42 USC § 413(a)(2)(A). In sum, a claimant needs to earn a certain amount of earnings to earn one quarter of coverage for purposes of DIB. In the year 2000, this figure was $780. *See* https://www.ssa.gov/oact/cola/QC html.

(R&R at 101 n.2.)

[3] This document is identified in the transcript as "Notice of Award Medicare," but the document includes only the portion that identifies plaintiff's right to appeal; the actual award is not included.

[4] On June 25, 2001, apparently out of frustration, plaintiff had sent a letter to the SSA directing the agency to withdraw his application. (Tr. 154-55.) It appears this was not construed as an actual withdrawal because the ruling issued despite the letter. This letter does not appear to have any relevance with respect to this Court's instant review.

Law Judge ("ALJ") (*id.* 178). On May 16, 2015, a hearing was conducted before an ALJ, at which plaintiff, represented by counsel, testified. (*See id.* 308-26.)

On June 19, 2015, the ALJ issued a written decision. (*Id.* 142-50.) The ALJ addressed two issues, one of which is relevant here: "[W]hether late additions to the [plaintiff's] record of covered earnings would result in giving him retroactive Title II cash benefits as of January 1, 2001, which is the earliest date last insured when the quarters of coverage provided by the late additions are calculated." (*Id.* 145.)[5]

The ALJ stated that "[t]he thrust of [plaintiff's] argument is that his April 24, 2001, application should be reopened, since his newly reported earnings entitled him to cash benefits back to his new date last insured of January 1, 2001." (*Id.* 147.) The ALJ concluded that reopening was not appropriate because the following two regulatory requirements were not met: (1) that plaintiff's "uncredited earnings would have given him insured status <u>at the time of the determination or decision</u>," and (2) that "the records reflecting those earnings were <u>in [SSA's] possession</u> at that time." (*Id.* 148, citing 20 C.F.R. § 404.988(c)(7) (underlining in original).) The Appeals Council declined review on April 28, 2017, rendering the ALJ's decision final. (*Id.* 135-38.)

Plaintiff timely filed the instant action under 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review. Plaintiff, represented by counsel, filed a brief on the merits (Doc. No. 13 ("Pl.

---

[5] The other issue was whether plaintiff's June 25, 2001 "withdrawal" of his DIB application voided the use of any application prior to August of 2012 as a basis for Title II cash benefits. (Tr. 145.) The ALJ concluded that the letter "can be read as more of a letter of frustration than a true and reasoned withdrawal[,]" (*id.* 149), and that plaintiff's lack of intent to withdraw his application was further evidenced by his acceptance of the Medicare benefits that were subsequently awarded. (*Id.*) The ALJ further decided, as has this Court (*see* n.4, *supra*), that the issue of the "withdrawal" letter is not relevant to the case "and should not be further adjudicated." (*Id.*)

Br.")); defendant filed a response brief on the merits (Doc. No. 14 ("Def. Br.")); and plaintiff filed a reply (Doc. No. 15 ("Pl. Reply")).

On May 1, 2018, Magistrate Judge Greenberg issued his R&R. (Doc. No. 16.)

## II. DISCUSSION

**A.    Standard of Review**

This Court's review of the Magistrate Judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]").

Judicial review of an administrative decision under the Social Security Act is typically limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).

Here, the issue is slightly different. Plaintiff is challenging the ALJ's decision not to reopen his original DIB application. "[O]rdinarily federal courts do not have jurisdiction to review an ALJ's decision not to reopen a prior application." *Anderson v. Comm'r of Soc. Sec.*, 195 F. App'x 366, 369 (6th Cir. 2006). "The exception is where a claimant raises a colorable constitutional claim." *Id*. (citing *Wills v. Sec'y of Health and Human Servs.*, 802 F.2d 870, 873 (6th Cir. 1986)

(citing *Califano v. Sanders*, 430 U.S. 99, 107-08, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977))). In the Sixth Circuit, "a colorable constitutional claim is established and judicial review is proper where the claimant's mental capacity prevented him or her from pursuing administrative remedies." *Id.* (citation omitted).

The issue here, then, is whether there is substantial evidence to support the ALJ's determination that there was no colorable constitutional claim that justified the reopening of plaintiff's April 2001 DIB application. "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.,* 741 F.3d 708, 722 (6th Cir.2014) (citation omitted). "Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle,* 609 F.3d at 854-55.

**B.** **Analysis**

The sole argument raised in plaintiff's brief on the merits is that the ALJ erred by not reopening his April 2001 DIB application because that finding failed to comply with relevant regulations and lacked the support of substantial evidence. (Pl. Br. at 76.) But this Court has no jurisdiction to review the merits of a decision not to reopen *unless* plaintiff *first* establishes that he had a colorable constitutional claim. Therefore, the R&R properly addressed the question of whether "substantial evidence supports the ALJ's determination [that plaintiff's] mental limitations did not prevent him from timely pursuing his administrative remedies." (R&R at 118.)[6]

---

[6] Assuming *arguendo* that one might find a "colorable constitutional claim," the R&R also offers some analysis of the appropriateness of the ALJ's decision not to reopen by discussing the requirements of the relevant regulation and Social Security Ruling. (*See* R&R at 120-21.) Because this Court finds no colorable constitutional claim, it need not address that alternative portion of the R&R. Further under the rules governing the Court's de novo review of an R&R, it need only examine matters properly objected to by a party. Here, the plaintiff raised no objection to anything but

The R&R clearly sets forth the substantial evidence supporting the ALJ's determination as follows:[7]

> The Court finds substantial evidence supports the ALJ's determination Newhouse's mental limitations did not prevent him from timely pursuing his administrative remedies. The ALJ expressly acknowledged Newhouse's mental impairments, as well as the applicability of SSR 91-5p. The ALJ correctly noted Newhouse's treating psychologist, Dr. Lord, opined in July 2001 that he (1) was oriented to person, place and time; (2) could follow directions; and (3) was capable of managing his benefits. (Tr. 148-49, 279-80.) In addition, while Dr. Gajarsky opined Newhouse had significant impairments in concentration, attention, memory and social functioning, she also found he had average intelligence and was "capable of following and understanding instructions." (Tr. 269-272.) The record also reflects Newhouse completed the 12th grade and did not attend special education classes. (Tr. 289.) Notably, at the administrative hearing in 2015, Newhouse did not testify he did not understand the appeal process relating to his 2001 application as a result of his mental impairments, or that his impairments otherwise inhibited his ability to pursue an appeal of the 2001 determination. Indeed, Newhouse testified he continued to communicate with the Agency in the years after the 2001 determination, sending letters on approximately seven separate occasions. (Tr. 318-19.)

(*Id.*) By way of objection, plaintiff asserts that the R&R "relied on evidence of [p]laintiff's ability to *understand* his administrative remedy but failed sufficiently to consider evidence of [p]laintiff's ability in 2001 to *follow through* with such remedy." (Obj. at 124, emphases added.) But the R&R did not fail in this regard. Instead, this was addressed as follows:

> Newhouse nonetheless argues remand is required because SSR 91-5p applies not only where a claimant's mental incapacity may have prevented him from *understanding* the review process, but also where his or her mental incapacity "limits the claimant[']s ability to do things for him/herself." (Doc. No. 15 at 97.) Newhouse maintains he satisfies this standard in light of evidence he has significant impairment in maintaining focus and following through with tasks. (*Id.*) The Court finds this argument without merit. While Newhouse's treating physicians opined he had significant limitations in memory, concentration and "following through

---

the R&R's conclusion that "substantial evidence supported the ALJ's determination that [p]laintiff's mental limitations did not prevent him from timely pursuing his administrative remedies relating to his 2001 application." (Obj. at 123.)

[7] In all quotations from the R&R, the Court has substituted the CMECF page identification numbers for the R&R's use of the transcript's bates numbers.

> with daily functioning," they also specifically found he was "capable of *following* and understanding instructions." (Tr. 271-72) (emphasis added). In addition, Dr. Lord found Newhouse was capable of managing benefits, if awarded, which would by necessity include the abilities to follow through with tasks and "do things for himself." (Tr. 280.)

(R&R at 119.)

Plaintiff identifies other record evidence that he claims was ignored by the R&R. (Obj. at 126-27.) But, although "acknowledg[ing] there is evidence in the record that might support [plaintiff's] argument," (R&R at 119), the R&R properly observed that "the substantial evidence standard presupposes there is a zone of choice within which the [ALJ] may proceed without interference from the courts." (*Id.*, internal quotation marks and citation omitted; alteration in original.) "This zone of choice includes resolving conflicts in the evidence and deciding questions of credibility." (*Id.*, internal quotation marks and citation omitted.)

In his objections, plaintiff also relies on *Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981) for the proposition that "the denial of benefits because of the plaintiff's failure to understand and act on her notice of remedy was a denial of due process, and moreover that '[t]his type of contention seems peculiarly apropos in the context of Social Security disability benefit proceedings in which, as here, the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand *or act upon* notice of available administrative remedies.'" (Obj. at 125-26, quoting *Parker*, 644 F.2d at 1202 (emphasis added by plaintiff).) But *Parker* is distinguishable.

In *Parker*, a claimant filed four separate DIB applications, the first three unrepresented by counsel. The first application was denied because, although Parker met the earnings requirement, she did not meet the disability requirements. Parker never pursued an administrative appeal, nor did she seek reconsideration, although she was advised that she could do so within six months of

7

the initial denial. Instead Parker filed a second application three years later, which was promptly denied on the basis of *res judicata*. Again no appeal was taken or reconsideration requested. Three years later, Parker filed a third application, which was also denied on the basis of *res judicata* and not appealed. A fourth application, filed two years later with the assistance of counsel, met the same fate; but Parker sought reconsideration and, before ruling, the ALJ ordered a psychiatric examination. After receiving the psychiatric report, the ALJ denied Parker's request for a hearing on the basis of *res judicata*. In reversing and remanding, the Sixth Circuit explicitly noted that "[n]o finding [had been] made by the ALJ or by the psychiatrist concerning Parker's psychiatric condition *during the time following her first application* when she failed to pursue her administrative remedies." *Parker*, 644 F.2d at 1200 (emphasis added). The court ordered:

> we remand to the district court with instructions that it direct the Secretary to make a determination, after considering such evidence as may be presented, whether mental illness prevented her from understanding and pursuing her administrative remedies following the denial of her first application for benefits. Once such a determination is made, the district court will have a sufficient record before it to decide what relief, if any, is consonant with due process and the Secretary's regulatory scheme. . . .

*Id*. at 1203.

The circumstances are different here, where the ALJ has already made the determination for which *Parker* was remanded. Here, the ALJ specifically addressed the question of whether there was evidence that plaintiff's mental limitations after the denial of his first application had prevented him from following through with an appeal. The ALJ answered in the negative and, as properly found by the R&R, that determination is supported by substantial evidence, which ends this Court's analysis.

## III. CONCLUSION

For the reasons discussed above, plaintiff's objections to the R&R are overruled. The R&R is accepted. Because the defendant's decision was supported by substantial evidence, that decision is affirmed, and this case is closed.

**IT IS SO ORDERED**.

Dated: July 10, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**